UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 10-cv-4644 (JFB) (AKT)
_____

UNITED STATES *EX REL.* JOSEPH F. TOMMASINO, P.A., PHD, *ET AL.*,

Plaintiffs,

VERSUS

ANTHONY A. GUIDA, M.D., *ET AL.*,

Defendants.
_____

**MEMORANDUM AND ORDER**
March 6, 2017
_____

JOSEPH F. BIANCO, District Judge:

Suspecting Medicare fraud, Relator Joseph F. Tommasino ("relator") commenced this action against defendants Anthony Guida, M.D., Dr. Joseph Gigante, Dr. Leonard Savino, Dr. Robert Sica, Island Medical of Medford LLP, and Guida and Savino, LLP (collectively "defendants") in the name of the United States (the "government") pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33. (Compl., ECF No. 1, at ¶ 9.) The government settled the case on August 28, 2015 in the amount of $106,393.30, and relator received an 18% relator share of the proceeds. (ECF No. 22-4, Exs. B, C.) Relator now seeks reasonable attorneys' fees from defendants in the amount of $115,807 and costs in the amount of $1,127.68 in connection with the underlying *qui tam* action. (ECF No. 22.) He also seeks $51,132.50 in attorneys' fees and $4,017.67 in costs in connection with the instant fee application. (ECF No. 28.)

For the reasons set forth below, the Court awards relator $79,953.30 in attorneys' fees and $1,127.68 in costs for the underlying *qui tam* action, and $14,422 in fees and $1,312 in costs for the instant fee application.

I. ATTORNEYS' FEES

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). Under the FCA, however, a relator who brings a successful *qui tam* lawsuit is entitled to attorneys' fees. *See United States v. Keshner*, 794 F.3d 232, 237 (2d Cir. 2015) (citing 31 U.S.C. 3730(d)(1)).

1

Generally, to determine reasonable attorneys' fees, a court must calculate a "lodestar figure," which is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). "Both [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); *Perdue*, 559 U.S. at 542). "'[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee.'" *Perdue*, 559 U.S. at 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986)). Thus, the Supreme Court has recognized that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 551. "The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012) (citing *Hensley*, 461 U.S. at 433).

### A. Proportionality

As a threshold matter, defendants argue that relator's request for $115,807 in attorneys' fees is excessive and should receive an across-the-board cut because the case settled for $106,393.30, of which relator only received $19,150.79. (Def.'s Mem. Law Opp'n Mot. for Attorneys' Fees and Expenses ("Def.'s Br."), ECF No. 27, at 1–2, 11–13.) Relator counters that disproportionality between results and fees does not warrant a reduction because, from counsel's *ex ante* perspective, the case appeared to be worth much more, the government intervened in the action (and thus confirmed its merit), and reduction based on disproportionality would undermine the purpose of the FCA. (Pl.'s Reply Mem. Supp. Award of Attorneys' Fees and Expenses ("Pl.'s Reply"), ECF No. 28, at 2–5.)

The Supreme Court has recognized that "plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley*, 461 U.S. at 440; *see also Stanczyk v. City of New York*, 752 F.3d 273, 284–85 (2d Cir. 2014) (citing *Hensley*, 461 U.S. at 434–35). The Court has also stated that, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440; *see also Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004). Correspondingly, in determining the prevailing party's degree of success, a court must consider "'the quantity and quality of relief obtained,' as compared to what the plaintiff sought to achieve as evidenced in her complaint . . . ." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)). For instance, the Second Circuit has indicated that a reduction in attorneys' fees is warranted where a plaintiff who sought substantial monetary damages is only awarded a nominal sum. *See, e.g., Carroll*, 105 F.3d at 81–82 (affirming district court's reduction of requested attorneys' fees because, *inter alia*, "[t]here was no damage award"); *Pino v. Locascio*, 101 F.3d 235, 238–39 (2d Cir. 1996) (holding that district court erred in awarding attorneys' fees in civil rights action where plaintiff only recovered $1 in nominal damages).

On the other hand, the Second Circuit has "repeatedly rejected the notion that a fee may

be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (collecting cases); *see also City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("We reject the proposition that fee awards under [42 U.S.C.] § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."); *Townsend v. Benjamin Enterprises, Inc.*, 679 F.3d 41, 60 (2d Cir. 2012) ("[A] presumptively correct 'lodestar' figure should not be reduced simply because a plaintiff recovered a low damage award." (quoting *Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 526 (2d Cir. 1991))). This rule is especially prevalent in the civil rights context, where "a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value." *Kassim*, 415 F.3d at 252. Some courts have applied this rule in *qui tam* cases as well, reasoning that large fee awards advance the purpose of the FCA to encourage employees to report suspected violations by their employers. *See U.S.A. v. CDW–Government, Inc.*, No. 305CV00033 (DRH) (PMF), 2013 WL 11267176, at *13 (S.D. Ill. May 17, 2013).

The Court declines to reduce attorneys' fees in this case based on the amount of the recovery. Congress designed the FCA "to prevent the United States Treasury from being drained of millions of dollars by fraudulent billings by federal government contractors." *U.S. by Dep't of Def. v. CACI Int'l Inc.*, 953 F. Supp. 74, 77 (S.D.N.Y. 1995). Correspondingly, the FCA's *qui tam* provisions "encourage private individuals to bring suits on behalf of the government." *Id.* If, however, a court were to substantially reduce a relator's attorneys' fees because the government settles for less than the amount expected by the relator, it would discourage attorneys from investing the time and resources necessary to bring a *qui tam* action, thereby undermining the purpose of the FCA. *See CDW–Government*, 2013 WL 11267176, at *13. Thus, a disproportionality rule in this context would have the same effect as that rule in the civil rights context, discouraging lawyers from pursuing potentially meritorious actions because the risk significantly outweighs the reward. *See Kassim*, 415 F.3d at 252; *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("The relevant issue, however, is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.").

In addition, even if a disproportionality rule were appropriate in the FCA context, the Court concludes that its application is not warranted here. First, although the case only settled for $106,393.30 where relator initially expected a recovery of millions, relator's counsel had no control over the settlement procured by the government and limited influence in the investigation once the government intervened. Counsel, therefore, bears no responsibility for the settlement's relative modesty—at least in comparison to their initial expectations. Furthermore, relator did not obtain only nominal damages. *See, e.g.*, *Carroll*, 105 F.3d at 81–82; *Pino*, 101 F.3d at 238–39. Instead, his recovery *was* substantial, amounting to almost $20,000 (from a settlement of $106,393.30), an amount large enough to warrant a significant fee. *See Townsend*, 679 F.3d at 47 (affirming award of $141,308.80 in attorneys' fees despite recovery of about $30,000); *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992) (upholding award of over $500,000 despite recovery of only $60,000); *Brown v. Starrett City Assocs.*, No. 09-CV-3282 JBW, 2011 WL 5118438, at *9 (E.D.N.Y. Oct. 27, 2011)

(awarding over $80,000 in attorneys' fees despite jury award of only $500); *CDW–Government*, 2013 WL 11267176, at *13 (awarding approximately $3.7 million in attorneys' fees, "53% of the entire recovery in this case"); *see also Hines v. City of Albany*, 613 F. App'x 52, 54 (2d Cir. 2015) ("We are unpersuaded by Defendants' attempts to characterize the $10,000 settlement in this case as meager. Moreover, the success here was hardly technical."). Accordingly, the Court declines to reduce the award for disproportionality under the circumstances of this case.

### B. Reasonable Hourly Rates

"The reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. The Second Circuit's "'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). The Second Circuit also instructed district courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989). *See Arbor Hill*, 522 F.3d at 190. The twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (quoting *Johnson*, 488 F.2d at 717–19). Finally, a district court should also consider "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," and "that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* at 190. "The burden rests with the prevailing party to justify the reasonableness of the requested rate," and a plaintiff's attorney "should establish his hourly rate with satisfactory evidence—in addition to the attorney's own affidavits." *Hugee*, 852 F. Supp. 2d at 298.

In general, "[c]ourts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals." *D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK)(WDW), 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015); *see also Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) ("Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates." (citations omitted)). Of course, in light of the numerous fac-

tors that courts in this circuit consider to determine a reasonable hourly rate, "the range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." *Siracuse v. Program for the Dev. of Human Potential*, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012).

Relator requests a billing rate of between $425 and $525 for the two attorneys for whom he seeks attorneys' fees, William Leonard and Kimberly D. Sutton. (*See* Mot. for Attorney Fees by Joseph F. Tommasino, ECF No. 22, Ex. A ("Billing Mem."), at 3–12.) He also seeks between $160 and $175 per hour in fees for the work completed by three paralegals. (*See id.*) Defendant claims that these rates are not consistent with rates typically awarded in this district. (Defs.' Br. at 4–5.)

1. William Leonard

Leonard graduated from the Dickinson School of Law and is currently a partner at the law firm of Obermayer Rebmann Maxwell & Hippell LLP ("Obermayer"), where he has worked for 22 years. (Decl. of William J. Leonard Supp. Mot. for Attorneys' Fees and Expenses ("Leonard Decl."), ECF No. 22-2, ¶¶ 1, 3.). He has practiced law as a commercial litigator for 31 years and as a *qui tam* litigator since 2009. (*Id.* ¶ 3.) His customary hourly rate was $500 from 2010 through 2011 and then increased to $525 on January 1, 2012, where it remains today. (*Id.* ¶ 25.)

The rates sought for Leonard exceed the rates normally awarded in the Eastern District for attorneys of similar experience. *See Sass*, 6 F. Supp. 3d at 261 ("Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates." (citations omitted)); *see, e.g.*, *246 Sears Rd. Corp. v. Exxon Mobil Corp.*, No. 09-CV-889 NGG JMA, 2013 WL 4506973, at *11 (E.D.N.Y. Aug. 22, 2013) (awarding $425 hourly rate for attorney with 30 years' experience); *Barkley v. United Homes, LLC*, No. 04-CV-875 KAM RLM, 2012 WL 3095526, at *8 (E.D.N.Y. July 30, 2012) (awarding $400 hourly rate for attorney with 30 years' experience and $450 for attorney with 40 years' experience). Indeed, they even exceed "[t]he highest rates in this district," which "are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of [a particular area of] law and are recognized by their peers as leaders and experts in their fields." *Hugee*, 852 F. Supp. 2d at 300.

Relator argues, however, that such a high rate is consistent with *U.S. ex rel. Doe v. Acupath Labs., Inc.*, No. CV 10-4819, 2015 WL 1293019, at *10 (E.D.N.Y. Mar. 19, 2015), a *qui tam* case where Judge Wexler adopted the Magistrate Judge's recommendation that Attorney Robert Sadowski receive an hourly rate of $450 for 2010, $500 for 2011, $550 for 2012, and $600 for 2013. At the outset, however, it should be noted the Magistrate Judge *reduced* the hourly rate in that case from a requested rate of $575 for 2010, $600 for 2011, $700 for 2012, and $850 for 2013. *See id.* at *9. It should also be noted that Sadowski had extensive expertise in *qui tam* cases and healthcare fraud, having served as the Health Care Fraud Coordinator in the U.S. Attorney's Office for the Southern District of New York, where he supervised all civil health care fraud prosecutions, including FCA cases, prior to his work in private practice. *Id.* at *6.

The Magistrate Judge listed several reasons for setting the rates above the market rate. On the one hand, the Magistrate Judge

5

noted that the second and third *Johnson* factors—the novelty and difficulty of the questions and the level of skill required to perform the legal services properly—militated against a high rate because "Medicaid fraud is a typical kind of fraud covered by the FCA." *Id.* Similarly, the Magistrate Judge noted that counsel's "'customary rate' of $650 is significantly higher than the upper limit of the usual range for this District, where rates higher than $350 per hour are generally reserved for the unusually expert litigation or other special circumstances." *Id.* (collecting cases). On the other hand, the Magistrate Judge recognized that "*qui tam* litigation under the False Claims Act is a specialized area of law with which only a small number of practitioners are familiar" and that "such practice requires knowledge of procedural rules which do not apply in other types of litigation." *Id.* at *10. The Magistrate Judge justified the above-market rates because "they reflect[ed] the skill, quality, and experience of the attorney, as well as the degree of specialization required by this case." *Id.*

Beyond *Acupath Labs*, however, relator has identified no other *qui tam* case where such high rates were approved, and, as noted above, the highest rates in this district rarely exceed $450 per hour, even for the most experienced attorneys in similarly complex commercial cases. *See, e.g.*, *Hilton v. Int'l Perfume Palace, Inc.*, No. 12–CV–5074, 2013 WL 5676582, at *11 (E.D.N.Y. Oct. 17, 2013) (reducing rate of partners from $645 to $450 in trademark, trade dress, and patent infringement action involving Paris Hilton fragrances); *Leser v. U.S. Bank Nat'l Assn.*, No. 09–CV–2362, 2013 WL 1952306, at *10–11 (E.D.N.Y. May 10, 2013) (reducing hourly rate from $790 to $425 where counsel was a senior litigator with 28 years of experience at a major firm, in complex commercial matter involving real estate loan development projects and guaranties and breach of contract claims); *Libaire v. Kaplan*, No. CV 06-1500 DRH ETB, 2011 WL 7114006, at *4 (E.D.N.Y. June 17, 2011) (awarding $475 to a senior partner with over 30 years of experience in a securities fraud case), *report and recommendation adopted as modified*, No. 06 CV 1500 DRH ETB, 2012 WL 273080 (E.D.N.Y. Jan. 30, 2012); *Manzo v. Sovereign Motor Cars, Ltd*, No. 08 Civ. 1229, 2010 WL 1930237, at *8 (E.D.N.Y. May 11, 2010) (awarding, in a Title VII case, $480 per hour to a litigator with 30 years of experience because, though the rate was "at the upper end of the range typically awarded in this district, [the attorney] was brought in to try the case, [and] his trial skills may well be the reason for the favorable jury award," and awarding hourly rates of $360 and $300, respectively, to attorneys with 19 and 11 years of experience). Furthermore, another court in this district awarded substantially lower fees in a *qui tam* case, albeit for a defendant. *See Pugach v. M & T Mortg. Corp.*, 564 F. Supp. 2d 153, 159 (E.D.N.Y. 2008) (awarding defendant's counsel, two partners with 18 and 30 years' experience and specialization in complex commercial cases, including *qui tam* defense, $250 per hour).

Although the Court agrees with *Acupath Labs* that "*qui tam* litigation under the False Claims Act is a specialized area of law with which only a small number of practitioners are familiar" and that "such practice requires knowledge of procedural rules which do not apply in other types of litigation," 2015 WL 1293019, at *10, it is not clear that such cases are so complex and specialized that they merit higher rates than other commercial cases involving areas of law as complex as patent infringement, commercial real estate, or securities, *see Hilton*, 2013 WL 5676582, at *11 (patent infringement); *Leser*, 2013 WL 1952306, at *10–11 (real estate); *Libaire*, 2011 WL 7114006, at *4 (securities). In addition, lead counsel in *Acupath Labs* was uniquely specialized in the field of FCA liti-

6

gation, having spent several years supervising FCA prosecutions. *See* 2015 WL 1293019, at *6. Furthermore, like in *Acupath Labs*, the type of healthcare fraud at issue in this case "is a typical kind of fraud covered by the FCA," and thus the second and third *Johnson* factors "do not weigh strongly in favor of a higher than usual hourly rate." *Id.* at *9. Finally, this case involved no novel questions of law and required limited commitment from relator's counsel once the government intervened. *See Westport Ins. Corp. v. Hamilton Wharton Grp. Inc.*, 483 F. App'x 599, 604 (2d Cir. 2012) (affirming fee reduction based on "the limited time and labor required, the relatively straightforward nature of the case, the absence of severe time demands, and the rates awarded in similar cases"); *Estiverne v. Esernio-Jenssen*, 908 F. Supp. 2d 305, 312 (E.D.N.Y. 2012) (declining to award the "highest approved rate in the District" where "the issues involved in the preliminary injunction were not overly complex or difficult; [and] only one aspect was novel"); *Warner Bros. Entm't v. Carsagno*, No. 06 CV 2676(NG)(RLM), 2007 WL 1655666, at *8 (E.D.N.Y. June 4, 2007) (reducing fee where, *inter alia*, "relatively little time and labor were required in prosecuting this case; [and] the legal questions presented were neither difficult nor novel").

As such, especially in light of the prevailing hourly rates in this district for complex commercial cases, the Court concludes that $425.00 per hour is a reasonable hourly rate for Leonard.

2. Kimberly Sutton

Sutton, the primary associate on the case, is a former registered nurse and a graduate of Rutgers School of Law. (Leonard Decl. ¶ 9; Suppl. Decl. of William J. Leonard ("Suppl. Leonard Decl."), ECF No. 35, ¶ 4.) She has been litigating in commercial cases for approximately 20 years, specializing in health care litigation. (*See* Suppl. Leonard Decl. ¶ 4; *id.*, Ex. A.)

The rate for senior-level associates commonly awarded in this district is $200 to $325. *Sass*, 6 F. Supp. 3d at 261. It is true that partners with as much experience in complex commercial cases as Sutton are typically awarded up to $400 per hour, *see, e.g.*, *Leser*, 2013 WL 1952306, at *10 (awarding $400 per hour to partner with 18 years' experience who second-chaired a trial and $375 to a partner with 16 years' experience), but *associates* with even more experience than her, still receive the senior associate rate, *see, e.g.*, *Libaire*, 2011 WL 7114006, at *4 (awarding associate with 26 years' experience $300 per hour in complex securities case).

In light of the prevailing hourly rates in this district and all other factors set forth in *Arbor Hill*, the Court concludes that $300 per hour is a reasonable hourly rate for Sutton. The Court reaches this conclusion in light of Sutton's extensive legal career, her focus on health care litigation, her position as an associate at Obermayer, and the rates in this district for senior associates (as high as $325 per hour) and partners (as low as $300 per hour). *See Sass*, 6 F. Supp. 3d at 261; *see also Libaire*, 2011 WL 7114006, at *4. For the reasons stated above, the Court finds that the nature of the legal work at issue in this case does not warrant a higher hourly rate.

3. Paralegals

Finally, relator requests hourly rates of $160 for two paralegals and $175 for one paralegal without explaining why these rates, almost double the market rate for paralegals in this district, are warranted. *See Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *12 (E.D.N.Y. Apr. 11, 2016) ("Courts in the Eastern District of New York award hourly rates ranging from . . . $70 to $100 per hour for paralegals."). Therefore, based upon the nature of

7

the legal work and all related factors, the Court concludes that $90 per hour is a reasonable rate for all three paralegals.

C. Reasonable Hours

"The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Custodio v. Am. Chain Link & Const., Inc.*, No. 06-CV-7148 (GBD), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Id.* (quoting *Hensley*, 461 U.S. at 434; *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items."). For example, in *Matusick v. Erie County Water Authority*, the Second Circuit upheld a district court's 50 percent across-the-board reduction of hours in light of "concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews." 757 F.3d 31, 64 (2d Cir. 2014) (citation omitted); *see also Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013) (upholding 40 percent across-the-board reduction in hours); *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (upholding 15 percent across-the-board reduction); *Kirsch*, 148 F.3d at 173 (upholding "20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records").

The Second Circuit has said that calculating reasonable hours expended is "best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation." *Carey*, 711 F.2d at 1146; *see also Lore v. City of Syracuse*, 670 F.3d 127, 175 (2d Cir. 2012) (holding that "the district court, which is intimately familiar with the nuances of the case," is in the best position to determine an appropriate fees award). "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 235–36 (2d Cir. 1985)).

Relator requests compensation for 266.1 hours of legal work, not including time spent on the instant fee application (discussed below). (Decl. of Michael S. Pepperman Supp. Relator's Mot. for Attorney's Fees ("Pepperman Decl."), ECF No. 22-3, ¶ 4.) Leonard billed 107 hours, Sutton billed 138.3 hours, paralegal Lisa Buenzle billed 20.4 hours, paralegal Drew Panciera billed 0.20 hours, and paralegal Gregory Weyant billed 0.20 hours. (*Id.*) These hours encompass, *inter alia*, counsel's work in connection with the complaint, investigation, presentation to the government, and correspondence between counsel, the government, and relator. (*See* Billing Mem. at 3–12.) Defendants challenge 20.8 specific hours billed and request an across-the-board cut of at least 10% for block billing. (Defs.' Br. at 5–7.)

1. Post-Intervention Hours

8

First, defendants challenge 4.2 hours billed after the government advised relator's counsel that it was meeting with defendants' attorneys. (*Id.* at 5–6.) Relator's counsel listed a total of 4.2 hours after January 2013, 1.2 of which related to either updates on the "status" of the case or "follow-up" correspondence, but lacking more specific information. (Billing Mem. at 11.) Of the remaining 3 hours, 1.2 hours involved reviewing a draft stipulation of settlement and discussing it with the government, 0.3 hours involved reviewing a client email and communications between Leonard and Sutton about a call to the government, and 0.2 hours involved a call to the government. (*Id.*) Counsel did not charge for the remaining 1.1 hours, which are not included in the 266.1 total hours for which they request compensation. (*Id.*)

The Court concludes that it was reasonable to bill some time for some status updates and follow-up correspondence, but the entries are vague regarding the content of those communications. As discussed below, however, the Court concludes that an across-the-board cut is appropriate for entries like these. Therefore, it declines to reduce any time for these specific entries, as the across-the-board cut outlined below adequately accounts for them. Furthermore, the Court declines to cut any of the 1.7 hours billed for reviewing and discussing the settlement because the government sought relator's assent before the settlement could move forward. Thus, contrary to defendants' contention, those hours *did* advance the case and thus do not trigger a reduction. *See U.S., ex rel. Abbott-Burdick v. Univ. Med. Assocs.*, No. 2:96-1676-12, 2002 WL 34236885, at *15 (D.S.C. May 23, 2002) ("Merely arguing that hours billed assisting government post-intervention are 'unnecessary' is clearly insufficient [to merit a reduction]." (citing *United States ex rel. Doe v. Penn. Blue Shield, et al.*, 54 F. Supp. 2d 410, 414 (M.D. Pa. 1999))).

2. Abandoned Claim

Defendants also request that the Court cut 16.6 hours billed for an abandoned claim. (Defs.' Br. at 7.) Specifically, they point out that counsel billed 3.9 hours for legal research on "group practice" on September 9, 2010, 3.7 hours shortly thereafter on September 21, 2010 to "review and revise complaint" (which defendants presume were spent adding group practice allegations), and 9 hours in total between October 6 and 7, 2010 to remove the group practice allegations. (*Id.*; *see also* Billing Mem. at 4, 5.)

As noted above, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. In *Medina v. Donaldson*, No. 10 CIV. 5922 (VMS), 2015 WL 77430, at *16 (E.D.N.Y. Jan. 6, 2015), a court in this district cited this rule to reduce attorneys' fees where the plaintiff voluntarily dismissed a number of claims. Similarly, courts in the Southern District of New York have held that "counsel may be denied compensation for work done . . . on claims that were abandoned." *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) (citing *Cooper v. Sunshine Recoveries, Inc.*, No. 00 Civ. 8898, 2001 WL 740765, at *3 (S.D.N.Y. June 27, 2001)). This is particularly appropriate where "the tasks performed by plaintiff's counsel were unjustified," such as filing a motion that "counsel themselves recognized" as futile." *Id.* Conversely, in *Castelluccio v. Int'l Bus. Machines Corp.*, No. 3:09CV1145 TPS, 2014 WL 3696371, at *4 (D. Conn. July 23, 2014), a court in this Circuit declined to reduce fees based on abandoned claims where they were "factually interrelated" to claims that succeeded and were "reasonably viable legal theories that counsel had a duty to investigate."

The Court concludes that no reduction is warranted for relator's abandoned group practice claim. The complaint set forth a claim for a violation of Medicare rules that allowed a physician assistant to bill services at a doctor's rate under some circumstances. (Compl. ¶¶ 7–8). The volume of services allegedly performed by physician assistants at the defendants' facilities raised a question about whether the individual doctors were performing at least 75% of the services provided by those facilities. (*Id.* at ¶ 53.) If the doctors performed less than 75% of those services, defendants could have been in violation of regulations concerning group practicing. *See* 42 C.F.R. § 411.352(d). It is clear, therefore, that any abandoned group practices claim was factually interrelated with the straightforward Medicare fraud claim on which the government recovered, and it was reasonable for counsel to investigate that claim. Furthermore, counsel timely abandoned that claim when they determined it had no merit. Under these circumstances, given the interrelated nature of the claims, no reduction is warranted for the abandoned claim. *See Castelluccio*, 2014 WL 3696371, at *4.

### 3. Block Billing

Finally, defendants argue that the Court should reduce the hours billed to account for block billing in the Billing Memorandum. (Defs.' Br. at 6.) Although defendants failed to identify any specific instances of block billing, the Court agrees that a reduction in hours on this ground is appropriate because the block billing "frustrated meaningful review of the reasonableness of the claimed hours." *Hines*, 613 F. App'x at 55 (affirming 30% reduction based in part on prevalence of block-billed entries). The Court has reviewed relator's submissions and noted repeated use of block-billing such that the reasonableness of each entry cannot be easily determined. For instance, there are numerous inscrutable entries that mention communications between the attorneys or with others without specifying the reason for the communication or vaguely describing it as involving "status." (*See, e.g.*, Billing Mem. at 3–4 (entries for 5/17/10, 8/6/10, 9/3/10, 9/8/10, 9/15/10, 9/23/10, 10/6/10).) Accordingly, the Court, in its discretion, has determined that a 10% reduction to billed hours is appropriate in this case. *See Spence v. Ellis*, No. CV 07-5249 (TCP) (ARL), 2012 WL 7660124, at *7 (E.D.N.Y. Dec. 19, 2012) (reducing hours in attorneys' fees application because the "substantial amount of block billing in the fee requests here renders it difficult to determine whether, and/or the extent to which the work done by plaintiff's attorneys is duplicative or unnecessary"), *report and recommendation adopted*, No. 07-CV-5249 (TCP), 2013 WL 867533 (E.D.N.Y. Mar. 7, 2013); *Molefi v. Oppenheimer Trust*, No. 03 CIV. 5631 (FB) (VVP), 2007 WL 538547, at *7–8 (E.D.N.Y. Feb. 15, 2007) (applying 15% reduction for, *inter alia*, a "substantial amount" of block-billing); *Melnick v. Press*, No. 06-CV-6686 (JFB) (ARL), 2009 WL 2824586, at *6 (E.D.N.Y. Aug. 28, 2009) (applying 10% reduction based on counsel's "repeated use of block-billing such that the reasonableness of each entry could not be as easily determined"); *Aiello v. Town of Brookhaven*, 94 CIV. 2622 (FB) (WDW), 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) (applying 10% reduction to billed hours because of attorneys' "substantial" use of block-billing).

\* \* \*

Applying the rates and reductions outlined above and excluding the instant fee application (discussed below), the lodestar

amount amounts to $79,953.30.[1] For the reasons outlined above, the Court finds this amount reasonable and adopts it as the fee award for the underlying *qui tam* action. *See Millea*, 658 F.3d at 166.

### D. Fee Application

For his attorneys' work on the instant fee application, relator requests $51,132.50. (Suppl. Leonard Decl. ¶ 18.) This amount reflects 55.80 hours billed by Leonard, 49.30 hours billed by Sutton, and 0.30 hours billed by paralegals, all at the rates initially requested. (Suppl. Leonard Decl., Ex. B ("Suppl. Billing Mem."), at 1.) It also reflects 8.10 hours billed at a rate of $275.00 per hour by attorney Alexander Batoff. Almost all of this time was spent preparing Leonard's declarations, Pepperman's declaration, and the two briefs relator filed in connection with this motion. (*See id.* at 2–4.)

The Court concludes, in its discretion, that relator is entitled to attorneys' fees for counsel's work on the instant motion. *See Wilder v. Bernstein*, 975 F. Supp. 276, 283 (S.D.N.Y. 1997) ("It is well settled that prevailing parties are entitled to reimbursement for the time spent by their attorneys in preparing fee applications."). Nevertheless, as discussed above, the hourly rates requested for this work are excessive and shall be reduced accordingly to match the rates that apply in the underlying action. In addition, relator provides no information about the credentials of Batoff, who billed at a rate of $275.00, but the Court takes judicial notice that Batoff was admitted to practice law in Pennsylvania on October 27, 2014, has active status with the Pennsylvania Bar Association, and is employed by Obermayer. *See* The Disciplinary Board of the Supreme Court of Pennsylvania, *PA Attorney Information: Alexander Victor Batoff*, http://www.padisciplinaryboard.org/lookup/pa-attorney-search.php (last visited Mar. 2, 2017) (listing bar number, status, date of admission, and law firm). Given the lack of more specific information in relator's submissions, however, the Court concludes that $100 per hour is a reasonable rate for Batoff. *See Sass*, 6 F. Supp. 3d at 261 (E.D.N.Y. 2014) ("Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately . . . $100–$200 for junior associates.").

In addition, the Court concludes that the amount of time billed on this fee application is excessive. First, Leonard and Sutton billed 10.1 and 49.3 hours, respectively, on the initial application, declarations, and briefing even though, at that time, they had not received specific objections from defendants regarding the fee requested. (*See* Suppl. Billing Mem. at 2–3.)[2] Rather than simply submitting their Billing Memorandum along with a straightforward brief explaining why the award sought was consistent with other awards in the Eastern District, counsel submitted a lengthy brief that recounted in excessive detail the underlying *qui tam* proceeding,

---

[1] The Court calculated this number as follows: The lodestar amount for Leonard is $40,927.50, reflecting 96.3 hours (after the 10% reduction) at $425 per hour. The lodestar amount for Sutton is $37,341, reflecting 124.47 post-reduction hours at a rate of $300 per hour. Finally, the lodestar amount for the three paralegals is $1,684.8, reflecting 18.72 post-reduction hours at a rate of $90 per hour. Combined, the lodestar amount for the underlying *qui tam* action is therefore $79,953.30.

[2] In his initial declaration, Leonard asserts that he billed 13.8 hours and Sutton billed 41.6 hours in preparing the initial brief. (Leonard Decl. ¶ 24.) On review of the Supplemental Billing Memorandum, however, it appears that they billed 10.1 and 49.3 hours, respectively, prior to submission of the motion on November 6, 2015. (*See* Suppl. Billing Mem. at 2–3.) The Court concludes this was the time spent on the initial brief.

11

as well as the specific law that applied in that proceeding. (*See* Pl.'s Mem. Law Supp. Mot. for Attorneys' Fees ("Pl.'s Br."), ECF No. 22-4, at 1–8.) Then, in an attempt to preempt defendants' opposition, counsel explains why a number of specific actions they took were reasonable, even though, at that time, defendants had made no indication that they would challenge those actions. (*Id.* at 13–16.) As relator recognizes, this approach "required research into a five and a half year period, and it took time." (Pl.'s Reply at 14.) The Court disagrees, however, with the contention that it was "reasonable and necessary." (*Id.*) Instead, relator's approach proved unnecessary, as much of the argument in the opening brief concerned issues that ultimately were not in dispute. Attorneys as experienced as relator's counsel should have recognized the dangers of such preemptive briefing, and, therefore, this approach was unreasonable. Consequently, the Court shall reduce the hours billed on the initial brief (and its accompanying exhibits) by 75% (*i.e.*, to 3.45 for Leonard and to 12.325 for Sutton). *See Big R Food Warehouses v. Local 338 RWDSU*, 896 F. Supp. 292, 299 (E.D.N.Y. 1995) (awarding "12 hours for the preparation of attorney's fees [motion]").

Once defendants filed their opposition listing specific objections to the requested award, relator's counsel billed 46.9 hours drafting a reply brief and its supporting documents,[3] which counsel characterizes as "a completely new and different undertaking compared to the opening brief." (Pl.'s Reply at 14.) Nevertheless, the issues raised were far from complex or novel. *See Mid-Hudson Legal Servs. v. G & U, Inc.*, 465 F. Supp. 261, 273 (S.D.N.Y. 1978) (allowing over 200 hours on attorneys' fee application based on the "novelty, complexity and importance of the underlying issues"). On the contrary, defendants' arguments were fairly typical of an attorneys' fees motion, especially their arguments concerning the consistency of the requested rates with the usual rates in this district, the reasonableness of the hours, and block billing. *See, e.g.*, *Houston v. Cotter*, No. 07-CV-3256 (JFB)(AYS), 2017 WL 587178, at *5–*12 (E.D.N.Y. Feb. 14, 2017) (all of these arguments raised in opposition to attorneys' fees motion); *Sheet Metal Workers' Nat. Pension Fund v. Coverex Corp. Risk Sols.*, No. 09-CV-0121 SJF ARL, 2015 WL 3444896, at *9 (E.D.N.Y. May 28, 2015) (same); *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, 549 F. Supp. 2d 274, 282 (E.D.N.Y. 2008) (same). Their most unique argument—that the award should be reduced in proportion to the settlement amount—is also far from novel. *See Kassim*, 415 F.3d at 252 ("[W]e have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation.") Furthermore, as noted above, counsel has several years' experience litigating *qui tam* cases, which result in attorneys' fees awards when successful. *See Keshner*, 794 F.3d at 237 ("Section 3730(d)(1) provides that a successful qui tam plaintiff shall receive reasonable attorneys' fees and costs.") This experience should have made responding to these arguments a relatively simple task. Thus, in light of the straightforward nature of the issues and counsel's extensive experience, the Court concludes that a 50% reduction on the time spent on the reply brief is warranted (*i.e.*, to 20.25 for Leonard and to 2.7 for Batoff). *See Big R Food Warehouses*, 896 F. Supp. at 299.

The remaining time was spent on (1) communications about other subjects (0.2

---

[3] Relator does not specify precisely how many hours each attorney worked on the reply brief, but, on review of the Supplemental Billing Memorandum, the Court calculates that Batoff billed 5.4 hours on it, and Leonard billed 41.5 hours on it. (*See* Suppl. Billing Mem. at 3–4.)

12

hours by Leonard), (2) the procurement of documents from the Eastern District (0.3 hours by a paralegal), (3) Leonard's pro hac vice admission to the Eastern District (2.7 hours by Batoff), and (4) an opposition to defendants' request for an extension of time to file the opposition based on defense counsel's family health issues (4 hours by Leonard). (*See* Suppl. Billing Mem. at 3.) The Court concludes that the hours billed on the first three tasks were reasonable, but the four hours spent opposing a fairly routine extension request—which the Court granted—was unreasonable, especially given that the opposition was barely over a page and included two simple arguments (*i.e.*, that the opposition was untimely and would have been futile). (*See* Response in Opposition, ECF No. 24; Order granting Motion for Extension of Time to File Response/Reply dated December 2, 2015.) Therefore, those four 4 hours will be deducted from the total.

Thus, the lodestar figure for the instant fee application amounts to $14,422.[4] The Court finds this number fair and reasonable and adopts it as the award for the instant fee application. *See Millea*, 658 F.3d at 166.

E. Interest

Relator also requests an assessment of prejudgment interest on the award of attorneys' fees from September 25, 2015, thirty days following the signing of the settlement agreement. In federal civil cases, interest is awarded after the judgment. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). Where the governing statute is silent on prejudgment interest, a district court may award such interest in its discretion. *See Bd. of Governors of Fed. Reserve Sys. v. Pharaon*, 169 F.3d 110, 114 (2d Cir. 1999); *see also Commercial Union Assur. Co., plc v. Milken*, 17 F.3d 608, 613 (2d Cir. 1994).

Here, the FCA does not explicitly provide for prejudgment interest on an attorneys' fees award. *See* 31 U.S.C. § 3730(d)(2) ("Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs."). In addition, given the substantiality of the fee award, the Court concludes that it adequately compensates relator's counsel. Therefore, in its discretion, the Court declines to award prejudgment interest.

II. COSTS

In his motion for attorneys' fees and costs, relator requests $1,127.68 in costs on the underlying motion (Pepperman Decl. ¶ 5), and $4,018.67 in costs on the present fee application (Suppl. Leonard Decl. ¶ 18).

"As for costs, a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05-CV-985 (RRM)(RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Id.*; *see also First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696 (KAM)(SMG), 2013 WL 950573, at *10 (E.D.N.Y. Mar. 12, 2013) (same). In particular, under Local Civil Rule 54.1, "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,'" and "[b]ills for

---

[4] The Court calculated this figure as follows: 23.9 hours for Leonard at $425 per hour for a total of $10,157.50; 12.325 hours for Sutton at $300 per hour for a total of $3,697.50; 5.4 hours for Batoff at $100 per hour for a total of $540; and 0.30 hours for paralegals at $90 per hour for a total of $27.

the costs claimed must be attached as exhibits." *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458 (JGK)(DF), 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012) (quoting Local Civ. R. 54.1(a)), *report & recommendation adopted sub nom. Roberts v. City of New York*, 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012).

As a threshold matter, defendants do not object to an award of the $1,127.68 in costs initially sought by plaintiff. In any event, the Court has independently reviewed these costs and examined the Billing Memorandum, which explains the costs requested consist of: (1) a $350.00 filing fee, (2) $415.30 in document imaging, (3) $6.32 in postage, (4) $36.05 in telephone costs, (5) $288.71 in travel expenses, (6) $1.00 in fax expenses, and (7) $30.30 in messenger delivery, for a total of $1,127.68. (Billing Mem. at 1–2.) Having reviewed the Pepperman Declaration and the accompanying bill for costs, the Court determines these to be reasonable out-of-pocket expenses.

The additional costs sought by relator in connection with this fee application, however, are excessive. Relator has properly itemized those costs, which consist of: (1) $80.96 in messenger and delivery service, (2) $283.60 in document imaging, (3) $14.84 in telephone costs, (4) $30.41 in secretarial reimbursements, and (5) $3,608.86 in Lexis expenses. Although the first four costs are reasonable, out-of-pocket expenses, the Court concludes that over $3,600 in legal research costs—over three times the total costs sought in connection with the underlying action—is excessive. Thus, for the reasons discussed above in connection with the Court's reduction of attorneys' fees for the instant motion, the Court reduces this legal research cost by 75 percent. *See Big R Food Warehouses*, 896 F. Supp. at 299 (reducing award on fee application where issues were not complex).

Thus, relator is awarded $1,312 in costs for the present motion.

Accordingly, the Court awards plaintiff $1,127.68 in costs for the underlying *qui tam* action and $1,312 in costs for the instant motion.

### III. CONCLUSION

In sum, the Court awards relator $79,953.30 in attorneys' fees and $1,127.68 in costs for the underlying *qui tam* action. For the instant fee application, the Court awards $14,422 in fees and $1,312 in costs. In total, the award is $96,814.98. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: March 6, 2017
Central Islip, NY

\* \* \*

Relator is represented by William J. Leonard, Esq., Kimberly Sutton, and Alexander Batoff of Obermayer Rebmann Maxwell & Hippell, LLP, One Penn Center – 19th Floor, 1617 John F. Kennedy Boulevard, Philadelphia, PA 19103. Defendants are represented by Stuart Weichsel of Kern Augustine Conroy & Schoppman, P.C., 865 Merrick Avenue, Suite 200, Westbury, NY 11590.